## LAUDERBRUN *v.* DUFFY.

Under the 12th section of the charter of the Reading Railroad Company, the contractors were authorized to enter and occupy with temporary dwellings, stables, blacksmith's shops, &c., the lands adjoining the line of the road, provided no more was taken than was necessary for such purpose, while engaged in the performance of their contract.

*April* 27.—THE plaintiff in error brought ejectment in December, 1841, and proved title to the property. The defendant was a contractor for the Reading Railroad Company, and had agreed to complete his work in July, 1841; but it was shown that it was not finished until January, 1842. He claimed no title to the premises, but rested his defence on the right to enter and occupy for the necessary accommodation of his workmen, family, horses, &c., under the charter of the corporation, the 12th section of which provides that the company shall have power, by their engineers "and workmen, to enter in and upon, and occupy all land on which the railroad or its depots may be located, or which may be necessary for the erection of its engine and water stations, &c., or any other purpose necessary or useful in the construction and repairs of said road." Compensation by the company, and a mode of assessment was provided. The defendant erected a tempo-

rary building called a shantee, on a stone foundation, for the accommodation of his family, and thirty-five labourers; a blacksmith's shop, stables, wagon-house, and hog-pen, all of the same character with the shantee. He kept several working horses, a cow, and ten hogs. The buildings were not more than ten and a half perches from the road; and it was shown that the house could not have been placed any nearer without danger from the blasting of rocks on the railroad. There was evidence that the ground occupied was that most convenient for plaintiff, and that he had himself selected it for the shantee. The plaintiff requested a direction to the jury in substance as follows. 1. The contract with the company did not authorize such occupation as was proved. 2. The consent to the erection of the shantee did not authorize an erection of the stable, &c., nor an occupation by the animals as proved. 3. The consent must be presumed to have been limited to the time mentioned in the contract. 4. Such consent being without consideration, the plaintiff could remove the shantee as soon as other buildings were erected. 5. Defendant, even with the consent of plaintiff, was a mere tenant at will, and could be removed at any time.

The court told the jury the broad question was, whether the charter authorized this occupation by defendant. That if defendant was employed as a contractor on the road, and only occupied so much ground as was necessary for the purpose of constructing the road, he was authorized to do so, especially if the plaintiff had himself indicated the ground. That he might lawfully erect the shantee for the accommodation of his family, a stable, &c. &c.; and if these were necessary for the purpose of carrying on his work, the plaintiff, having brought suit before the contract was completed, could not recover. If they were unnecessary, he was entitled to a verdict.

*Bannan*, for plaintiff in error.—The real question is, whether the charter authorized such an entry. The clause giving a right to enter for *other purposes*, must be confined to the land required for the location of the road four rods in breadth, and for the purposes of the engines; for so much only is the company bound to make compensation; they are not bound for the trespasses of the families or cattle of their contractors. It is no answer, that the occupation was necessary, for the parties accepting the charter may not contest its expediency, 8 Serg. & Rawle, 222. And these privileges are not extended beyond the letter and spirit of the charter, as was said in 4 Peters, 168, when a similar clause in a charter was discussed.

*St. Geo. Campbell*, contrà.—No other meaning can be put on the

clause, *for other purposes* than this.   The right of location of every part of their works is expressly given ; then the right to enter *for other purposes* is given, and compensation is directed.   The jury have found the occupation was necessary, reasonable, and proper ; hence the charter is a complete defence.

*May* 4.   KENNEDY, J., after stating the case.—Although it appeared pretty clearly from the evidence, that the plaintiff had, before the defendants took possession of the land, consented to their doing so, and to their putting up the buildings thereon, and occupying the whole as they did, that they might the more conveniently grade their section of the railroad ; yet the main question is, Were they not authorized to do so by the act of Assembly of the 4th of April, 1833, entitled "An act to authorize the governor to incorporate the Philadelphia and Reading Railroad Company," Pamph. Laws of 1833, page 144 ?   We are decidedly of opinion, that according to the spirit and true meaning of the 11th, 12th, and 13th sections of that act, the defendants, under their contract with the company for grading the road, had full power and authority to enter upon and occupy the plaintiff's land adjacent to their section of the road as they did.   Indeed, it might, in many instances, be utterly impracticable to accomplish the construction of a railroad without such authority.   The legislature having granted, in express terms, the right, with the power and authority to construct the road, must be presumed to have granted likewise every incidental power and authority necessary to be exercised, in order to carry the power expressly granted into effect ; subject, however, to such qualifications as may be mentioned in the act.   Generally we consider the instruction given by the court below to the jury correct, as also their reasoning in support of the same, and therefore are willing to adopt it as our opinion on the case presented.   We can perceive no error in the charge of the court below, or in their answers to the plaintiff's points ; nor can we discover that any of his points have been omitted to be answered.

We therefore affirm the judgment.